**Catherine F. DINKINS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Agnes FABICK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Francis J. FABICK and Mildred Fabick, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**John J. FABICK and Elaine Fabick, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Joseph G. FABICK and Gloria Fabick, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Gilbert E. McNEILL and Loretta F. McNeill, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 18653, 18658, 18654, 18659, 18655, 18660, 18656, 18661, 18657, 18662, 18663 and 18664.

United States Court of Appeals
Eighth Circuit.

May 16, 1967.

Don O. Russell, St. Louis, Mo., for petitioner and filed brief with William A. Ens, St. Louis, Mo.

Robert S. Rifkind, Atty., Tax Division, Dept. of Justice, Washington, D. C., for respondent. Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Washington, D. C., and Lee A. Jackson, William A. Friedlander, Solomon L. Warhaftig, Attys., Dept. of Justice, Washington, D. C., were on the brief.

Before VAN OOSTERHOUT, BLACK-MUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Petitioners who are stockholders of Rental Equipment Company, a subchapter S Corporation, under § 1371, Internal Revenue Code of 1954, 26 U.S.C. § 1371, seek review of the Tax Court's determination of depreciation allowed Rental on its equipment for the fiscal years ending January 31, 1959, 1960, and 1961.

The Tax Court cases are here numbered 18,653–18,664 and were consolidated for trial, brief and opinion in that court, having common questions of law and fact. The Tax Court's opinion is reported at 45 T.C. 593.

Pursuant to § 1372, Internal Revenue Code of 1954, 26 U.S.C. § 1372, the stockholders of Rental Equipment Company unanimously elected to be taxed as a Subchapter S Corporation or "Pseudo-Corporation", which has the legal effect of treating the corporation for tax purposes as a partnership, thereby transferring *pro tanto* the income or loss on the corporate operation directly to the stockholders. Also, under the provisions of Subchapter S, capital gains retain their status and are passed through to the individual stockholders. Involved are deficiencies in federal income tax totaling $75,532.35 for the individual taxpayers' taxable years of 1958 through 1960.

Rental Equipment Company was incorporated in 1945 under the laws of the State of Missouri. Its principal business activity has been the leasing and renting of construction equipment, including tractors, traxcavators, motor graders, scrapers, bulldozers, angledozers, cranes, compressors, rollers, buckets and smaller miscellaneous units. The equipment was leased or rented primarily to contractors and to industrial plants. An average of fifty major units of rental equipment were maintained by Rental. These units were rented on a daily, weekly or monthly basis with no recapture provisions or purchase options.

The rental equipment business was highly competitive, thus making it necessary for Rental to maintain its equipment in top working condition and to also utilize the most modern and efficient type of equipment. When a substantial improvement was made in a particular machine or piece of equipment, Rental, by reason of competitive factors, would have to acquire the new equipment and replace its older models. For instance, in 1958 the Caterpiller Tractor Company had introduced a torque converter, which provided a semi-automatic shift on its equipment and then in the latter part of 1959, it introduced a fully-automatic shift. Rental took advantage of these technological improvements by purchasing the latest models and selling the earlier ones.

Rental purchased most of its equipment during the taxable years in question and at all times previous thereto from the John Fabick Tractor Company, and also sold its used equipment, with few exceptions, to the John Fabick Tractor Company or one of its subsidiary corporations. Thereafter, the John Fabick Tractor Company or one of its subsidiaries sold the used equipment purchased from Rental to third parties. The seven stockholders of Rental are also controlling stockholders of the John Fabick Tractor Company, which in turn owns all of the stock of four subsidiary corporations. The John Fabick Tractor Company is principally engaged in the business of selling new Caterpillar equipment, used equipment and in selling parts and servicing equipment.

Rental's returns for the taxable years in question show no ordinary taxable income but show capital gains realized from sales of equipment in the respective amounts of $49,704.95, $34,662.39 and $105,165.43, for fiscal years ending January 31, 1959, 1960, and 1961.

Rental claimed deduction for depreciation on construction equipment on its returns of income for the respective taxable years in question of $219,345.06, $177,984.69 and $157,811.58. Depreciation was computed by applying a salvage value of 12½ per cent on all of its construction equipment, except buckets and smaller miscellaneous units, and allocating a useful life of 6 years on its heavier equipment, 8 years on its compressors, and 3 or 4 years on its buckets or smaller units.

For the taxable year ending January 31, 1959, and for several years prior thereto Rental used the double declining balance method for computing depreciation on its rental equipment until the adjusted basis of the particular asset was reduced to approximately 50 per cent of cost, after which the straight line method of computing depreciation was employed. For taxable years ending January 31, 1960 and 1961, Rental used

the straight line method of computing depreciation, with minor exceptions.

The Commissioner in his statutory notices of deficiency determined that Rental's allowance for depreciation for each of the taxable years in question should take into consideration a salvage value of 60 per cent of cost, or the undepreciated cost at February 1, 1958, whichever was lesser. The Commissioner also determined that useful life in Rental's trade or business for the various types of equipment was 5 years for tractors, traxcavators, and other similar equipment, 7 years for compressors, and 3 years for buckets and miscellaneous small units.[1]

The Tax Court sustained the Commissioner's determination of the useful lives and the salvage values of Rental's equipment used in its business and the disallowance of depreciation resulting therefrom.

 Under 26 U.S.C. § 7482(a) we review decisions of the Tax Court "[I]n the same manner and to the extent as decisions of the district courts in civil actions tried without a jury; * * *", which is governed by Rule 52(a) of the Fed.R.Civ.P. Therefore, "findings of fact shall not be set aside unless clearly erroneous." The Commissioner's findings of salvage value are factual findings that carry a presumption of correctness; and when such findings are upheld by the Tax Court, they may not be disturbed on appeal unless clearly erroneous.

Oates v. Commissioner of Internal Revenue, 316 F.2d 56, 58 (8 Cir. 1963); Oliver v. Commissioner of Internal Revenue, 364 F.2d 575, 579 (8 Cir. 1966).

The sole issue presented is whether the Tax Court was correct in sustaining the Commissioner's determination that the salvage value of Rental's construction equipment was 60 per cent of cost. The petitioners acquiesced in the Commissioner's redetermination of useful lives.

The depreciation formula used by Rental of 6, 8, and 4 years with a salvage value of 12½ per cent, of course, must be determined under § 167 of the Internal Revenue Code of 1954 and Treasury Regulations § 1.167(a)–1 at the time of acquisition. Under Treasury Regulation § 1.167(a)–1(a), allowance for depreciation is recognized "so that the aggregate of the amount set aside plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property * * *. An asset shall not be depreciated below a reasonable value under any method of computing depreciation." Subsection (b) on useful life foregoes the useful *physical* life concept and employs the concept of useful lives embracing the period over which the asset may reasonably be expected to be useful in the taxpayer's trade or business. This Regulation was specifically upheld in the decisions of Hertz Corporation v. United

---

[1]. Apparently the redetermination of useful life was made by the Commissioner to satisfy the requirements of Treasury Regulation 167(a)-1(c), which permits him to redetermine salvage value based upon facts known at the time of a redetermination of useful life of the depreciable asset. The pertinent part of subsection (c) is as follows:

"*Salvage.* (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. *However, if there is a redetermination of useful life under the rules of paragraph (b) of this section, salvage value may be redetermined based upon facts known at the time such redetermination of useful life.* * * * The time at which an asset is retired from service may vary according to the policy of the taxpayer. If the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large proportion of the original basis of the asset. * * *" (Emphasis supplied)

States, 364 U.S. 122, 80 S.Ct. 1420, 4 L. Ed.2d 1603 (1960) and Massey Motors, Inc. v. United States, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960). Subsection (c) relates to salvage value. It states: "Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in taxpayer's trade or business."

We are here concerned only with the proper determination of salvage value of the depreciable assets used in Rental's business. The depreciation formula used by Rental with a 12½ per cent salvage value was applied in its fiscal 1948, 1949, and 1950 tax returns. This depreciation formula was approved by the Commissioner in an Internal Revenue audit in 1950–1951. However, the Commissioner is not precluded from determining that a taxpayer is not entitled to a deduction in the amount claimed in succeeding taxable years, though previously having approved a like deduction in an earlier taxable year. Easter v. Commissioner of Internal Revenue, 338 F.2d 968, 969–970 (4 Cir. 1964), cert. denied 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433; Municipal Bond Corporation v. Commissioner of Internal Revenue, 341 F.2d 683, 691 (8 Cir. 1965); Walker v. Commissioner of Internal Revenue, 362 F.2d 140, 142–143 (7 Cir. 1966), cert. denied Walker v. Pate, 385 U.S. 865, 87 S.Ct. 124, 17 L.Ed.2d 92.

The Commissioner asserts that Rental's 12½ per cent salvage value formula is utterly unrealistic and is disproved by Rental's own operation. The Commissioner disclaims the use of hindsight and his agent positively testified that his 60 per cent salvage value determination is based upon Rental's experience in disposing of items of equipment during the five previous taxable years of fiscal 1953–1958. For these items of equipment that had been held *for or beyond* their estimated useful life in Rental's business, Rental received an average of 59 per cent of cost. On all of the items sold during this five-year period Rental recouped approximately 80 per cent of its cost.[2] And during the taxable years in question, the selling prices on fully depreciated items averaged in excess of 57 per cent of cost and included items of equipment sold that had been held for periods considerably in excess of their estimated useful life in Rental's business.

Rental maintained for use in its business an average of 50 major units; 8 major units, held an average of 37½ months, were sold in fiscal 1959; 7 units, held an average of 25½ months, were sold in fiscal 1960; and 15 major units, held an average of 43 months, were sold in fiscal 1961. Rental received in fiscal 1959, $125,954.20 for equipment that cost $194,444.54, thus recapturing 65 per cent of cost; in fiscal 1960, $133,-109.16 for equipment that cost $174,-048.39, thus recapturing 76 per cent of cost; and in fiscal 1961 $286,775.00 for

2. Rental's returns for the taxable years ending January 31, 1953 through 1961 show equipment sales as follows:

| "Taxable year ended 1/31 | Total selling price | Equipment sold | Percentage of Selling price to cost |
|---|---|---|---|
| 1953 | $ 55,932.00 | $ 58,257.18 | 96 percent |
| 1954 | 132,615.96 | 157,391.36 | 84' " |
| 1955 | 453,591.05 | 613,736.08 | 74 " |
| 1956 | 225,042.91 | 292,504.55 | 77 " |
| 1957 | 127,333.28 | 162,913.92 | 78 " |
| 1958 | 191,095.00 | 202,165.58 | 95 " |
| 1959 | 125,954.20* | 194,444.54* | 65 " |
| 1960 | 133,109.16 | 174,048.39 | 76 " |
| 1961 | 286,775.00** | 437,940.79** | 65 " |

\* Automobile, which was sold for $1,150 omitted.

\*\* Truck, which was sold for $300, omitted."

equipment that cost $437,940.71. thus recapturing 65 per cent of the cost. Rental's returns for the taxable years in question show no ordinary income but capital gains from these equipment sales of $49,704.95, $34,662.39, and $105,165.-43 respectively.

■ The term "salvage" has become in tax law a term of art as used in the statutes and as interpreted by the courts. As definitively interpreted by Mr. Justice Clark in speaking for the majority in Massey Motors, Inc. v. United States, 364 U.S. 92, 80 S.Ct. 1411 (1960) the useful life of a depreciable asset must be related to the period for which it may reasonably be expected to be used in the taxpayer's trade or business and the taxpayer under the allowance for depreciation should recover only the cost of the asset less its estimated salvage, resale or second-hand value.

■ Rental contends that the Tax Court misapplied Massey and Hertz Corporation v. United States, 364 U.S. 122, 80 S.Ct. 1420 (1960) and asserts that it is willing to adopt the reasoning of this Court as expressed by Judge Blackmun in United States v. S & A Company, 338 F.2d 629 (8 Cir. 1964), cert. denied 383 U.S. 942, 86 S.Ct. 1194, 16 L.Ed.2d 206. Judge Blackmun's exhaustive opinion in *S & A Company* dealing with the issue of depreciation in year of sale considers and analyzes all of the major depreciation cases of the Tax Court, the Court of Appeals, and the Supreme Court; and its holding that the unanticipated and noncustomary sale in mid-life of a depreciable asset did not give rise to a disallowance of depreciation in the year of sale, even though the sale price was greater than the asset's adjusted basis, has been unheld in Fribourg Navigation Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 86 S. Ct. 862, 15 L.Ed.2d 751 (1966). Rental's operation, however, does not fall within either the facts or the ambit of *S & A Company*. Rental's sales of depreciable equipment for the eight-year span of 1953–1961 showed an actual retirement of equipment prior to the end of the equipment's useful life and consistently at a higher figure than the undepreciated cost and salvage value. The thrust of all of the evidence in the record, including that of the taxpayer's own experience, indicates that the Commissioner's determination of a salvage value at 60 per cent of cost was not clearly erroneous.

Rental contends that the Commissioner's redetermination of salvage value is based on hindsight, ignores an increase in price levels, and disregards the general inflation in our economy. Rental further contends the Commissioner failed to consider that depreciation should be computed over the full period of useful life, that a sale during the depreciable life span would not ordinarily terminate the useful life of the equipment, and that sale price does not conclusively fix salvage value for purposes of the depreciation equation. While we agree that a sale during the depreciable life span would not ordinarily terminate the useful life and that sale price does not conclusively fix salvage value, we think these points are not dispositive of the issue; and we think the other contentions are not well taken.

■ It is the taxpayer's own experience and operation that serves as the guideline for the Commissioner's depreciation equation. Only if the taxpayer's experience is inadequate may the general experience in the industry be used until such time as taxpayer's own experience forms an adequate basis for determination. There is no indication of improper use of hindsight or an improper use of taxpayer's own experience in the Commissioner's determination of salvage value. Furthermore, there is insufficient evidence in the record to show a general price level increase in the particular equipment purchased and sold. A price increase in new equipment containing technical improvements and betterments is insufficient to prove the taxpayer's

**831**

contention of a general price level increase in older and in some respects obsolete construction equipment.

As noted in *Massey* at 101 of 364 U.S., at 1416 of 80 S.Ct. "Congress intended by the depreciation allowance not to make taxpayers a profit thereby, but merely to protect them from a loss." This is not to say that sale price of depreciable equipment determines its salvage value, as admittedly the salvage value under the Treasury Regulations must be estimated at the time of the acquisition of the asset. However, the taxpayer's estimate must be reasonable, realistic, and in accordance with the Treasury Regulations implementing the "reasonable allowance" for depreciation under § 167 of the Internal Revenue Code of 1954.

The profitable method utilized by Rental in the disposal of its depreciable assets, usually to John Fabick Tractor Company, a related corporation, was not shown to be due to increased price levels as was the case in Fribourg Navigation Co., Inc. v. Commissioner of Internal Revenue, 383 U.S. 272, 86 S.Ct. 862 (1966). In view of this experience, Rental's 12½ per cent salvage figure was unrealistic, while the 60 per cent figure of the Commissioner appears in accord with reality. Though we agree with taxpayer's contention that an increase in valuation through market appreciation is a true capital gain as was definitively recognized in *Fribourg*, taxpayer has failed to prove such appreciation. The taxpayer's own experience indicates that the Commissioner's determination of salvage value is not clearly erroneous. In fact, it rests upon substantial evidence. And it is the Tax Court's function to weigh the evidence, pass upon the credibility of the witnesses, and evaluate the inferences from the

documentary evidence. Hamm v. Commissioner of Internal Revenue, 325 F.2d 934 (8 Cir. 1963); Seletos v. Commissioner of Internal Revenue, 254 F.2d 794 (8 Cir. 1958).

Rental reported no ordinary income for the taxable years in question and its method of disposal of depreciable assets indicates a conscious attempt to convert ordinary income into capital gains by the use of an unrealistic salvage value formula. These dispositions of depreciable assets are not isolated, unanticipated and noncustomary sales in mid-life of these assets. Using taxpayer's clearly established past practices, the Commissioner made a reasonable and realistic assessment of taxpayer's actual salvage value as determined by its sale prices on the depreciable assets.

In summary, salvage value and useful life comprise the depreciation equation under Treasury Regulation § 1.167 (a)–1 (a), (b), (c). Since useful life in the taxpayer's trade or business is agreed to as set by the Commissioner, the only real point at issue here is the proper estimation of salvage value at the time of the acquisition of the depreciable assets. The relatively high salvage value set by the Commissioner appears warranted by reason of Rental's actual experience in its operation preceding the tax years in question; and is not disproved by the actualities of the tax years. in question.

Rental has failed to show that the Tax Court's findings are clearly erroneous or that incorrect principles of law were applied by the Tax Court. In fact we think the Tax Court properly applied the principles laid down in *Massey, Hertz, Fribourg*, and *S & A Company*.

The decisions of the Tax Court are affirmed.