Alexis M. HAWKINS and Rosemary K. Hawkins, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 82–2360.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1983.

Decided July 20, 1983.

---

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, David English Carmack, Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Glenn L. Norris, George F. Davison, Jr., Des Moines, Iowa, for appellants.

Before HEANEY, Circuit Judge, and HENLEY and BROWN*, Senior Circuit Judges.

HEANEY, Circuit Judge.

Alexis and Rosemary Hawkins appeal from the United States Tax Court's judgment sustaining the federal income tax deficiency asserted against them by the Commissioner of Internal Revenue (Commissioner). The Tax Court held that the Commissioner properly reduced the partnership loss deducted by the taxpayers and properly disallowed an investment tax credit that they claimed. We affirm.

## I.

### BACKGROUND

On February 9, 1978, the Commissioner issued to the taxpayers a statutory notice of deficiency asserting a federal income tax deficiency for 1973 in the amount of $33,-488, of which $32,068 remains in dispute. The Commissioner based the deficiency challenged here on two principal transactions.

On June 8, 1973, Alexis Hawkins[1] purchased thirteen of the fifty-eight outstanding shares of Americana C–G Company, Ltd. (Americana), an Iowa limited partnership. Americana's fiscal year ended on July 31, 1973. On Hawkins' 1973 income tax return, he claimed a loss deduction of $47,-498, which equaled 13/58 of the loss incurred by Americana over its entire 1973 fiscal year. The Commissioner, however, determined that because Hawkins had been an owner of Americana stock for only fifty-four days of the 1973 fiscal year, he could deduct no more than 54/365 of his allocable share of the partnership's $47,498 loss—$7,027.

In calendar year 1973, Hawkins also purchased for $126,453.15 various works of art, including mosaics, paintings, and statues. The taxpayer displayed these objects in his law office at various times. On his 1973 income tax return, Hawkins claimed an investment tax credit pursuant to 26 U.S.C. § 38 equal to the purchase price of the artworks. The Commissioner disallowed this investment tax credit on the ground

---

* The Honorable BAILEY BROWN, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

1. Rosemary Hawkins, Alexis Hawkins' wife, is a party to this action solely because she signed the joint income tax return for the years in question. For convenience, we will refer only to Alexis Hawkins or the taxpayer in the remainder of this opinion.

that section 38 was inapplicable because the art pieces were not of a character properly subject to an allowance for depreciation under 26 U.S.C. § 167.

In May, 1978, Hawkins petitioned the Tax Court for a redetermination of the asserted deficiency. A trial was held on October 1 and 2, 1980.[2] On August 4, 1982, the Tax Court issued its opinion sustaining the Commissioner's determination with respect to the loss deduction and investment tax credit claimed by Hawkins.[3] The taxpayer now appeals from this decision.

## II.

## DISCUSSION

### A. The Partnership Loss Deduction.

The first issue we face is whether the Tax Court properly ruled that Hawkins was entitled to deduct only 54/365 of his pro rata, or distributive, share of the loss sustained by Americana in its 1973 tax year rather than his full pro rata share. The primary legal principles which govern this issue are not in dispute.

A partnership, of course, is not a taxable entity. 26 U.S.C. § 701. Each partner reports his or her distributive share of partnership profits or losses on his or her individual income tax return. 26 U.S.C. § 702(a). Section 706(c)(2)(A) of the Internal Revenue Code (Code) states that the tax year of a partnership is closed with respect to a partner who sells his or her entire interest in the partnership and that such partner's distributive share of the partnership profits or losses is determined "for the period ending with such sale." 26 U.S.C. § 706(c)(2)(A). Conversely, the new partner is limited to his or her distributive share of partnership profits or losses which occurred after he or she entered into the partnership. Treas.Reg. § 1.706–1(c)(2).

Hawkins concedes that section 706 and the assignment of income doctrine prohibit him from deducting any loss incurred by Americana prior to his entry into the partnership. Nonetheless, the taxpayer contends that the Tax Court erred in sustaining the Commissioner's reduction of the partnership loss he claimed because the primary components of Americana's loss during its 1973 fiscal year—depreciation and lost rent from apartment vacancies[4]—occurred after he purchased his shares in the partnership.

Hawkins urges that the principal component of Americana's loss for fiscal year 1973 was depreciation of assets, which is a deductible partnership expense under 26 U.S.C. § 167. Hawkins contends that depreciation is an annual event which accrues to the partnership only at the end of its fiscal year when the item is entered into the partnership books, rather than over the course of the entire fiscal year. Thus, according to Hawkins, Americana accrued its entire depreciation expense when it closed its fiscal year on July 31, 1973—which is after the taxpayer entered the partnership—and he is entitled to his full distributive share of Americana's depreciation deduction.

The Tax Court rejected Hawkins' position, and held that Americana's deprecia-

---

2. The parties tried this case before Judge Cynthia Holcomb Hall. Prior to rendering her decision, however, Judge Hall resigned from the Tax Court. Thereafter, the case was reassigned to Judge Jules Korner, III, who issued the Tax Court's opinion.

3. The Commissioner also issued Hawkins a statutory notice of deficiency for 1974 in the amount of $9,738. The Commissioner reached this determination by limiting the taxpayer's charitable contribution deduction to $12,500, instead of the $40,000 deduction claimed by Hawkins. The Tax Court held that Hawkins was entitled to deduct $26,500 for his charita-

ble contribution, and thus it reduced the Commissioner's asserted deficiency for 1974. Neither party appeals from this ruling.

4. The Commissioner disputes the taxpayer's claim that Americana's 1973 loss resulted primarily from its depreciation deduction and lost rent arising from vacancies in apartments owned by the partnership. For purposes of this opinion, however, we will assume that depreciation and lost apartment rent were the exclusive components of the loss incurred by Americana in 1973, as well as Hawkins' distributive share of that loss.

tion deduction must be allocated over its entire fiscal year and that Hawkins was entitled to deduct only 54/365 of his pro rata share of Americana's depreciation expense for fiscal year 1973. We affirm.

Section 167 states that "[t]here shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)" of certain property. 26 U.S.C. § 167(a). It also provides for several alternative methods of computing depreciation and sets various limitations on the use of those methods. Nowhere, however, does section 167 state that the depreciation deduction is an annual event as the taxpayer contends.

Indeed, as a matter of accounting theory, depreciation is simply an accounting device intended to allocate the cost of using an asset to the periods in which that use contributes to revenue by approximating the gradual diminution in value of the asset over time due to age, wear and tear, and obsolescence. *See Massey Motors, Inc. v. United States,* 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960); *Hertz Corp. v. United States,* 364 U.S. 122, 80 S.Ct. 1420, 4 L.Ed.2d 1603 (1960). Thus, as the Tax Court properly recognized, depreciation theoretically occurs continuously over the useful life of an asset, rather than, as Hawkins suggests, on the day or days that a taxpayer's bookkeeper periodically finds it convenient to make the entry in the books.[5]

Moreover, Hawkins' position is contrary to the relevant case law. It is clear that section 706 and the assignment of income doctrine[6] prohibit a taxpayer from deducting any portion of a loss incurred by a partnership prior to the taxpayer's entry into the partnership. *E.g., Snell v. United States,* 680 F.2d 545, 547–548 (8th Cir.),

*cert. denied,* —— U.S. ——, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982); *Rodman v. Commissioner,* 542 F.2d 845, 856–859 (2d Cir.1976). Moreover, *Richardson v. Commissioner,* 693 F.2d 1189 (5th Cir.1982), expressly refutes Hawkins' depreciation argument within the context of a partnership. In *Richardson,* the Fifth Circuit affirmed a Tax Court decision holding that under section 706 and the assignment of income doctrine, the taxpayers were entitled to deduct only 1/365 of the depreciation allowance reported by the partnership of which they were members because they did not join the partnership until the last day of its tax year. *Id.* at 1192–1194.

Notwithstanding the analysis above, Hawkins contends that he is entitled to his full distributive share of Americana's depreciation deduction because the members of the partnership have agreed that depreciation is to be allocated on an annual basis among partners of record at the close of the fiscal year, Americana and its partners have followed this practice uniformly in the past, and the Internal Revenue Service (IRS) did not object to this practice when it audited the partnership returns for the fiscal years ending in 1969, 1970, 1971 and 1972.

These contentions are of no avail to the taxpayer. Section 706 and the assignment of income doctrine prohibit "retroactive allocation of a full year's partnership losses (or income) to a taxpayer who was a member of the partnership for only part of the tax year, notwithstanding provisions of a partnership agreement to the contrary." *Williams v. United States,* 680 F.2d 382, 384 (5th Cir.1982). Moreover, it is settled that even if the Commissioner erroneously may have accepted the tax treatment of certain items in previous years, he is not precluded from correcting that error

---

5. The tax regulations reflect this theoretical basis for depreciation by stating that "[t]he period for depreciation of an asset shall begin when the asset is placed in service and shall end when the asset is retired from service." Treas.Reg. § 1.167(a)–10.

6. Under the assignment of income doctrine, income is taxable only to the person who earns it

and a loss is deductible only by the one who sustains it. *Williams v. United States,* 680 F.2d 382, 384–385 (5th Cir.1982). The doctrine clearly is applicable to the allocation of partnership profits or losses to partners. *Id. See United States v. Basye,* 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

in a subsequent year. *Harrah's Club v. United States,* 661 F.2d 203, 205 (Ct.Cl. 1981); *Union Equity Cooperative Exchange v. Commissioner,* 481 F.2d 812, 817 (10th Cir.), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973). The Tax Court, therefore, did not err in rejecting Hawkins' claim that Americana incurred its entire depreciation deduction for the 1973 tax year after the taxpayer entered the partnership.

■ Hawkins contends that the second principal component of the loss sustained by Americana in fiscal year 1973 was lost rental income from apartments owned by the partnership due to vacancies in June and July, 1973. Thus, Hawkins again argues that Americana sustained this portion of its 1973 loss after he entered the partnership, and the Tax Court erred in not permitting him to deduct his pro rata share of this loss. We cannot agree.

The taxpayer correctly observes that Jim Dixon, a certified public accountant for the partnership, testified that reduced rents from the Campus Gardens Apartments in June and July, 1973, "contributed" to the partnership loss for the 1973 tax year. Hawkins, however, failed to introduce any evidence—from either Americana's books, its Partnership Return of Income (Form 1065), or any other source—which detailed precisely what portion of the partnership's loss was attributable to the apartment vacancies which occurred in June and July, 1973. Absent such detailed information, we cannot say that the Tax Court erred in not finding that Hawkins was entitled to any loss deduction for rent losses which occurred after the taxpayer entered Americana.

Hawkins advances one final contention with respect to both the depreciation deduction and lost rents in question. He argues that in order to prevent the IRS from receiving an undeserved windfall, he should be permitted to deduct his full pro rata share of the loss incurred by Americana in its 1973 tax year. Specifically, Hawkins reasons that if the Tax Court's decision is sustained, neither he nor the former partners from whom he purchased his partnership shares will be able to claim that portion of the loss deduction which the Commissioner has disallowed here: he cannot deduct the loss because it occurred before he entered the partnership, and the former partners cannot now claim the deduction to which they would have been entitled because the limitations period has run. Although there is some appeal to this theory, we cannot accept it. Hawkins simply has not proven that the former partners would have been entitled to deduct that portion of Americana's loss which occurred before Hawkins purchased their shares. A taxpayer can deduct his or her distributive share of a partnership loss only to the extent of the adjusted basis in his or her partnership interest at the end of the partnership year in which the loss occurred. 26 U.S.C. § 704(d). Hawkins has introduced no evidence showing what—if any—adjusted basis the former partners had in their shares before they sold their interests.

To conclude, section 1.706–1(c)(2)(ii) of the Treasury Regulations on Income Tax specifically provide that in the absence of an interim closing of the partnership books upon a transfer of partnership shares, partnership profits or losses must be prorated among the transferor and transferee partners based upon the respective portion of the partnership's tax year that each was a member of the partnership. The Commissioner utilized precisely this method to allocate to Hawkins only 54/365 of his distributive share of Americana's 1973 loss. Hawkins has not shown that this allocation was erroneous nor has he suggested a better method of allocation. Accordingly, we affirm the Tax Court's judgment sustaining the Commissioner's determination on this issue.

### B. The Investment Tax Credit.

■ The second issue presented here is whether the Tax Court properly held that Hawkins was not entitled to claim an investment tax credit for the artworks that he purchased in 1973 and displayed in his law office. Again, there is little dispute over the controlling legal principles.

Sections 38 and 46 through 48 of the Code provide an investment credit against tax upon the purchase and placement in service of certain qualified investment property, commonly referred to as "section 38 property." *See* 26 U.S.C. §§ 38, 46–48. To qualify as section 38 property, the objects in question must be "property with respect to which depreciation * * * is allowable." 26 U.S.C. § 48(a)(1); Treas.Reg. § 1.48–1(b)(1).

As noted above, section 167(a) of the Code allows a depreciation deduction for the wear and tear, exhaustion or obsolescence of property used in a taxpayer's trade or business.[7] The aggregate of depreciation deductions allowable is the difference between the cost or basis of the depreciable property and its salvage value[8] at the end of its useful life.[9] Treas.Reg. § 1.167(a)–1(a). *See Dinkins v. Commissioner,* 378 F.2d 825, 830 (8th Cir.1967). Thus, in order for property to be depreciable, and hence to qualify as section 38 property, it must have a determinable useful life and a salvage value that is less than its depreciable basis. *See Harrah's Club v. United States, supra,* 661 F.2d at 206–208.

■ It is the taxpayer's burden to demonstrate that he or she has satisfied all the requirements to claim an investment tax credit. *See United States v. Kimball Gas Company,* 358 F.2d 133, 134 (5th Cir.1966); U.S.Tax Ct.R. 142(a). The Tax Court held that Hawkins failed to meet that burden in

this case. It found that although Hawkins proved that his artworks had a depreciable basis,[10] he failed to establish a useful life or salvage value for that property. Because these factual findings are not clearly erroneous, we must affirm them and the Tax Court's judgment against Hawkins on his investment tax credit claim.

■ The useful life of an asset for depreciation purposes need not be shown with certainty, a reasonable approximation will suffice. *Burlington Northern, Inc. v. United States,* 676 F.2d 566, 573 (Ct.Cl.1982). Hawkins contends that because he cannot use his artworks after he dies, the Tax Court erred in finding that he did not satisfy the useful life requirement by introducing evidence of his life expectancy based upon standard mortality tables. We cannot agree with Hawkins.

■ The taxpayer introduced no evidence of the inherent useful life of the artworks themselves. Indeed, the IRS has recognized that art objects frequently will not have a determinable useful life—and hence will not be depreciable—because "[w]hile the actual physical condition of the property may influence the value placed on the object, it will not ordinarily limit or determine the useful life." Rev.Rul. 68–232, 1968–1 Cum.Bull. 79.[11]

Moreover, the record supports the Tax Court's finding that Hawkins introduced no evidence showing that he intended to practice law until he dies.[12] Thus, while it is

---

7. The Commissioner conceded at trial that Hawkins used the various artworks in question in his trade and business, the practice of law.

8. An asset's "useful life" is "the period which [it] may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income." Treas.Reg. § 1.167(a)–1(b).

9. The "salvage value" of an asset is "the amount (determined at the time of acquisition) which is estimated will be realizable upon [its] sale or other disposition * * * [when it] is to be retired from service by the taxpayer." Treas. Reg. § 1.167(a)–1(c).

10. The Commissioner does not challenge this finding on appeal.

11. We decline to adopt the Commissioner's suggestion that works of art are never depreciable because no useful life can be determined in any circumstances. *See John R. Thompson Co. v. United States,* 338 F.Supp. 770, 778–779 (N.D.Ill.1971), *aff'd,* 477 F.2d 164, 167 (7th Cir. 1973).

12. The Tax Court, however, clearly erred in making its alternative finding that mortality tables could not be used to predict Hawkins' life expectancy because there was no record evidence of his age. The record shows that Hawkins was fifty-two years old on July 2, 1978. Thus, in 1973, he was forty-seven years old. The Tax Court could have applied this information to the mortality tables if Hawkins' theory otherwise would have been acceptable.

unlikely that Hawkins will use the artworks beyond his life expectancy, there is no clear evidence as to whether such use will terminate short of Hawkins' life expectancy.

In addition, Hawkins' position has little support in the case law. For example, in *Coussement v. Commissioner,* 391 F.2d 227, 229 (6th Cir.1968), *aff'g,* 25 Tax Ct.Rep. (CCH) 930 (1966), the Sixth Circuit summarily affirmed the Tax Court's decision which rejected the taxpayer's contention that his rental property had a useful life of twenty years based upon his life expectancy, and instead held that the Commissioner properly determined that the useful life was thirty-three and one-third years based upon its present physical condition and usage. *See also Niagara Mohawk Power Corp. v. United States,* 525 F.2d 1380, 1386–1387, 207 Ct.Cl. 576 (Ct.Cl.1975) (useful life of water rights is indeterminable and cannot be measured by taxpayer's period of use).

*Hampton Pontiac, Inc. v. United States,* 294 F.Supp. 1073 (D.S.C.1967), upon which Hawkins places heavy reliance, is plainly distinguishable from this case. In *Hampton Pontiac,* the taxpayer held an intangible asset—a franchise agreement that was a personal services contract—which would terminate upon his death, and the court therefore found that the franchise's useful life equaled the life expectancy of the taxpayer. *Id.* at 1077–1079. In contrast, in this case, Hawkins' tangible assets likely will not cease to exist or appreciably diminish in value upon the taxpayer's death and, thus, the rationale of *Hampton Pontiac* is not applicable here.

The Tax Court, therefore, did not clearly err in finding that Hawkins failed to establish that his artworks had a determinable useful life. Although this failure of proof precludes Hawkins from claiming an investment tax credit on his art purchases, the Tax Court also held that Hawkins failed to meet the requirements of showing a salvage value for his property. It found that "[i]n this record, there is a complete failure to

establish a salvage value for the art works [sic] in any amount or at any point in time." We agree.

■ The expert witnesses for both the taxpayer and for the Commissioner testified that any estimate of salvage value of the artworks would be highly speculative,[13] and neither witness would commit himself to a specific figure for reasonably estimated salvage value—either on a whole or on an individual basis. Hawkins contends that the absence of a specific estimate is unimportant, because he need only establish that some salvage value exists and his expert witness in fact testified that the artworks will have some value if they are sold upon the taxpayer's death. Although a taxpayer might not need to prove a specific dollar figure for salvage value to qualify for an investment tax credit, he or she must demonstrate that the depreciable basis of the property in question exceeds its salvage value to establish that the property is subject to a depreciation allowance, and thus that it qualifies as section 38 property. *See supra,* at 352–353. Hawkins' evidence here not only failed to assign a specific salvage value to the artworks, it even failed to indicate whether that salvage value was less than the depreciable basis of the property. The Tax Court, therefore, did not err in finding that Hawkins failed to meet his burden of proof with respect to the salvage value requirement of the investment tax credit.

In summary, the taxpayer has not demonstrated that the artworks in question have either a determinable useful life or salvage value. Consequently, the Tax Court correctly determined that the artworks were not depreciable assets and that they did not qualify as section 38 property. The court, therefore, did not err in sustaining the Commissioner's disallowal of the investment tax credit claimed by Hawkins.

## III.

## CONCLUSION

For the above-stated reasons, the decision of the Tax Court is affirmed.

---

**13.** Indeed, Hawkins' expert, Donald Webster, testified that any estimate of salvage value

"would be too speculative to be of much * * * value to the Court."