FRANCES B. GARRISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garrison v. Commissioner
Docket No. 20052-92
United States Tax Court
T.C. Memo 1994-200; 1994 Tax Ct. Memo LEXIS 204; 67 T.C.M. (CCH) 2896; T.C.M. (RIA) 94200; May 5, 1994, Filed *204 Decision will be entered under Rule 155. Frances B. Garrison, pro se. For respondent: William W. Kiessling. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency of $ 1,638 in petitioner's Federal income tax for 1990. After concessions, the issues for decision are: (1) Whether certain interest claimed by petitioner as an itemized deduction constitutes qualified residence interest under section 163(h)(3); (2) whether petitioner is entitled to a bad debt deduction under section 166; and (3) whether certain expenses claimed by petitioner as an itemized deduction constitute deductible medical expenses under section 213. [2]
*205 Some of the facts were stipulated, and those facts, with the annexed exhibits, are made part hereof and incorporated by reference. At the time the petition was filed, petitioner's legal residence was Nashville, Tennessee. [3]
*206 On her joint Federal income tax return for 1990, petitioner claimed on Schedule A of the return an itemized deduction for home mortgage interest in the amount of $ 11,525.86. In the notice of deficiency, respondent determined that $ 1,599.04 of that amount was not home mortgage interest but was personal interest under section 163(h)(2). For 1990, only 10 percent of personal interest is deductible. Sec. 163(h)(5). Petitioner, at trial, conceded $ 688.04 of the amount in question. The remainder of $ 911 represented interest paid to Thousand Trails NACO on an indebtedness petitioner and her husband incurred on October 10, 1986, for an interest in a real estate development known as the Natchez Trace Wilderness Preserve at Hoenwald, Tennessee. The total cost of the investment was $ 6,500, on which petitioner and her husband paid $ 550 cash and executed a note for $ 5,950. The investment allowed petitioner and her husband to camp on the grounds of the development for 2 weeks each year, and, in addition, petitioner was given title to a vacant lot for construction of a second home. Petitioner and her husband never built a home on this property; however, they did avail themselves *207 of the camping privileges each year. Petitioner's 1988 income tax return was audited by the Internal Revenue Service, and the itemized deduction for the interest that year as home mortgage interest was not questioned and was allowed. For 1990, respondent determined that the $ 911 interest on this indebtedness was not home mortgage interest but was personal interest. On July 22 and 31, 1986, petitioner and her husband made two investments in a corporation known as Micorp. Ltd., which totaled $ 4,800. Their investment in this corporation was evidenced by two identical instruments, which referred to the investments as "shares" and provided that, beginning September 25, 1986, and continuing each month thereafter for a period of 5 years, the "stock" would be redeemed through cash payments which, for the 5-year period, would total $ 144,000. During 1986, petitioner and her husband received one payment of $ 2,400, which they treated as a return of capital. By the end of 1989, the remainder of the investment of $ 4,800 had been paid to petitioner and her husband, which they also treated as a return of capital. No further payments were ever received by them. On her 1990 Federal income *208 tax return, petitioner claimed on Schedule A -- Itemized Deductions, a bad debt loss of $ 7,200 relating to this investment in Micorp. Ltd. The $ 7,200 was based on what petitioner claimed would have been paid to her during 1990 had Micorp. Ltd. paid the amounts agreed to in the certificates evidencing the investment. Petitioner and her husband claimed similar bad debt deductions of $ 14,400 each on their 1987, 1988, and 1989 income tax returns for the redemption amounts that were not paid. In the audit of their 1988 return, the $ 14,400 deduction claimed for that year was not questioned. In this case, respondent disallowed the $ 7,200 claimed for 1990. On petitioner's 1990 income tax return, $ 7,199.20 was claimed as a deduction on Schedule A -- Itemized Deductions for medical and dental expenses. Of this amount, $ 1,407.94 was disallowed by respondent in the notice of deficiency; however, as noted earlier, respondent, at trial, conceded $ 599.30 of this amount, leaving $ 808.64 at issue. All of the claimed medical expenses related to the illness of petitioner's husband, who passed away on December 16, 1990. Of the $ 808.64 disallowed expenses, $ 107.84 represented payments *209 for books on nutrition and health care, $ 237.80 was for insurance premiums, and $ 463 was for summer camp for petitioner's two daughters with the Young Men's Christian Association (YMCA). Mr. Garrison's illness was such that the books were helpful in preparing his diet. The insurance did not cover hospitalization costs but provided fixed dollar amounts for each day of hospitalization of the insured. The payments to the YMCA for the day care of petitioner's daughters were necessary because petitioner was employed full time, and Mr. Garrison, petitioner's husband, was unable to take care of their daughters because of his illness. Respondent determined that the three categories of expenses were not medical expenses under section 213. Respondent's determinations in a notice of deficiency are presumed correct, and the burden of proof is on the taxpayer to show that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). *210 Initially, in addressing petitioner's contention that some of the expenses at issue in this case were claimed in prior years and allowed by respondent in the audit of petitioner's 1988 return, the Court notes that respondent is not equitably estopped from correcting a mistake of law made in a prior year. The cases hold that, even though respondent may have overlooked or accepted the tax treatment of certain items in previous years, respondent is not precluded from correcting that error in subsequent years with respect to the same taxpayer. Hawkins v. Commissioner, 713 F.2d 347, 351 (8th Cir. 1983), affg. T.C. Memo. 1982-451; Ward v. Commissioner, 240 F.2d 184, 185 (6th Cir. 1957), affg. per curiam 25 T.C. 815 (1956); Rose v. Commissioner, 55 T.C. 28 (1970). Estoppel cannot be invoked against the Government because of the unauthorized acts of its agents. Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917). The Court, therefore, rejects petitioner's contention that, because her 1988 income *211 tax return was audited, and respondent did not question the deduction of some of the expenses at issue, respondent is bound to the same position as to such expenses for 1990. The first issue is whether petitioner is entitled to an itemized deduction of $ 911 for home mortgage interest. Section 163(h)(1) provides generally that, in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest paid or accrued during the taxable year. However, under section 163(h)(2)(D), personal interest does not include any "qualified residence interest", as defined in section 163(h)(3). Section 163(h)(3) generally defines "qualified residence interest" as any interest paid or accrued on (1) acquisition indebtedness, or (2) home equity indebtedness, with respect to any qualified residence of the taxpayer. Section 1.163-10T(p)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987), provides generally that the term "qualified residence" means the taxpayer's "principal residence" or the taxpayer's "second residence". The term "principal residence" means the taxpayer's principal residence within the meaning of section 1034. *212 Since the interest claimed by petitioner here did not relate to her principal residence, but rather to a vacant lot owned by petitioner and her husband on which she camped yearly, the deductibility of this interest as qualified residence interest turns on whether petitioner's indebtedness was on property that would constitute a "second residence". Sec. 1.163-10T(p)(3)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987), requires, for a second residence, that the property be a residence as that term is defined in section 1.163-10T(p)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987). That regulation states: (ii) Definition of residence. Whether property is a residence shall be determined based on all the facts and circumstances, including the good faith of the taxpayer. A residence generally includes a house, condominium, mobile home, boat, or house trailer, that contains sleeping space and toilet and cooking facilities. A residence does not include personal property, such as furniture or a television, that, in accordance with the applicable local law, is not a fixture. [Id.]
*213 The Court concludes that petitioner's investment in the Natchez Trace Wilderness Preserve, and her indebtedness thereon, did not relate to property that constituted a second residence. Therefore, the interest petitioner paid during 1990 was neither on a "principal residence" nor on a "second residence". Accordingly, the interest was not "qualified residence interest" within the meaning of section 163(h)(3) and, therefore, was not deductible as "home mortgage interest" on her 1990 income tax return. Respondent is sustained on this issue. The second issue relates to petitioner's claim of a bad debt deduction for the two investments by petitioner and her husband during 1986 in the total amount of $ 4,800 in Micorp. Ltd. (the corporation). Petitioner and her husband had previously recovered their basis in this investment, and the deduction of $ 7,200 claimed on the 1990 return was for amounts the corporation was supposed to have paid petitioner but failed to pay. Section 166(a) provides generally that there shall be allowed as a deduction any debt that becomes worthless during the taxable year. Under section 1.166-1(e), Income Tax Regs., worthless debts arising from unpaid wages, *214 salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166, unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year. Under the instruments petitioner and her husband received for the $ 4,800 investment in the corporation, the corporation had committed itself to pay $ 144,000 over a 5-year period. The amounts due to petitioner for 1990 were not paid, and that is the basis for the $ 7,200 bad debt deduction petitioner claimed. However, petitioner and her husband never reported in income, either during 1990 or in any previous year, any of the amounts the corporation had obligated itself to pay to petitioner and her husband. In Gertz v. Commissioner, 64 T.C. 598, 600 (1975), this Court stated: We do not find it necessary to our determination of this issue to reach a finding concerning the validity of petitioner's debt; for assuming, without deciding, the bona fide character of the debt, it has long been settled that a taxpayer is not entitled to a bad debt deduction under section 166 *215 for the value of unpaid wages or other income items if such an item has never been reported as income. * * *
Petitioner, therefore, is not entitled to the $ 7,200 bad debt deduction claimed on her 1990 return. Respondent is sustained on this issue. [4]
The third and final issue is petitioner's entitlement to a deduction under section 213(a) for medical expenses. As noted earlier, petitioner claimed $ 7,199.20 for medical and dental expenses on her 1990 return. Respondent disallowed $ 1,407.94 of the amount claimed but, at trial, reduced the disallowed amount to $ *216 808.64 for the following items: $ 107.84 - For books on nutrition and health care 237.80 - Premiums for indemnity insurance 463.00 - Summer camp payments for petitioner's daughters $ 808.64 Section 213(a) generally allows a deduction for expenses paid during the taxable year, not compensated for by insurance, for the medical care of the taxpayer, his spouse or dependents, to the extent such expenses exceed 7.5 percent of adjusted gross income. Section 213(d)(1) provides: (d) Definitions. For purposes of this section -- (1) The term "medical care" means amounts paid -- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or (C) for insurance * * * covering medical care referred to in subparagraphs (A) and (B).
To qualify for "medical care", the expense must be for goods and services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness. Jacobs v. Commissioner, 62 T.C. 813, 818 (1974). *217 An incidental benefit is not enough. Havey v. Commissioner, 12 T.C. 409, 413 (1949). Expenses that are not for medical care are considered nondeductible personal expenses under section 262. Petitioner's husband was seriously ill during 1990. The $ 107.84 was expended for books which assisted petitioner in preparing her husband's diet and provided other valuable information relating to his care. As much as these books may have been helpful, it is the Court's conclusion that this expense was not directly or proximately related to the medical care of petitioner's husband. Respondent, therefore, is sustained in the disallowance of this item. The $ 237.80 represented payments of premiums for two insurance policies that paid a specific dollar amount during the time the insured, petitioner's husband, was hospitalized for sickness or injury. The insurance, however, did not pay the hospital costs or other medical expenses. Wage continuation insurance payments, which merely indemnify the insured for loss of income, but which do not pay for medical care, do not constitute deductible medical care expenses under section 213(a). Siragusa v. Commissioner, T.C. Memo. 1980-68; *218 Barton v. Commissioner, T.C. Memo. 1979-234. Respondent, therefore, is sustained in disallowance of this item. The final item of $ 463 represented amounts paid by petitioner for her two daughters' attendance at YMCA summer camp during 1990. Because her husband was ill and could not take care of the children, petitioner contended that she would not have been able to continue her full-time employment except for the summer camp. Thus, petitioner contends the $ 463 was related to her husband's expenses for medical care. The Court concludes that this expense was not directly or proximately related to the medical care of petitioner's husband. Respondent, therefore, is sustained in the disallowance of this item. [5]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner conceded in the written stipulation that, of the $ 9,836.40 Social Security benefits received by her during 1990, $ 3,497 was taxable. At trial, petitioner conceded that $ 688.04 interest paid to Educators Credit Union and deducted as an itemized deduction for home mortgage interest was personal interest, only 10 percent of which was deductible for 1990 under sec. 163(h)(5)↩. In the notice of deficiency, respondent disallowed $ 1,407.94 of the $ 7,199.20 claimed by petitioner as an itemized deduction for medical expenses. At trial, respondent conceded $ 599.30 of the disallowed amount, consisting of $ 520 paid to the YMCA and $ 79.30 paid to Metro Medical Supplies. With this concession, $ 808.64 in disallowed medical expenses remain at issue.
3. Petitioner was married to Frederick W. Garrison during 1990. Mr. Garrison died on Dec. 16, 1990. Petitioner filed a joint Federal income tax return for 1990. The notice of deficiency was accordingly issued to the Estate of Frederick W. Garrison, Deceased, and Mrs. Frances B. Garrison, surviving wife. The petition was filed only in the name of Frances B. Garrison. The Court, on its own, on Sept. 9, 1992, ordered that the caption of the case be amended to read "Frances B. Garrison and Estate of Frederick W. Garrison, Deceased, Petitioners v. Commissioner of Internal Revenue, Respondent". At trial, respondent filed a motion to dismiss for lack of jurisdiction as to the Estate of Frederick W. Garrison and to change caption. Petitioner Frances B. Garrison presented no evidence to establish that the Estate of Frederick W. Garrison was properly before the Court. Respondent's motion was granted.↩
4. Neither is petitioner entitled to a deduction for the loss of a worthless security under sec. 165(g) because, even if petitioner's instruments from the corporation were securities and did become worthless during 1990, the loss would be measured by petitioner's basis in the security. Her basis was zero, since she had previously recovered her investment as a result of receiving payments from the corporation during prior years. Sec. 165(g)(1).↩
5. In the notice of deficiency, respondent allowed petitioner a child care credit under sec. 21↩ in the amount of $ 196, which was not claimed on petitioner's return.