**EDGEWOOD AMERICAN LEGION POST NO. 448, Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 11917.

United States Court of Appeals Seventh Circuit.

June 12, 1957.

Rehearing Denied Sept. 9, 1957.

John J. Rochford, Indianapolis, Ind., Paul E. Blackwell, Paul T. Rcchford, Indianapolis, Ind., Rochford, Blackwell & Rochford, Indianapolis, Ind., of counsel, for appellant.

Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, Attorney, U. S. Dept. of Justice, Washington, D. C., Jack C. Brown, U. S. Atty., Indianapolis, Ind., Lee A. Jackson, Attorney, Dept. of Justice, Washington, D. C., Stephen Leonard, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff is an American Legion Post located in Indianapolis, Indiana, operating under a charter granted by the National Headquarters of the American Legion. It is a not-for-profit corporation organized under the laws of Indiana. Plaintiff commenced the instant action to recover a refund of wagering taxes in the amount of $12,499.37, paid in 1952, together with interest from the date of payment, pursuant to an assessment by the Commissioner of Internal Revenue under Sec. 3285(a) of the Internal Revenue Code of 1939 (Title 26 U.S.C.A. § 3285(a)). The District Court rendered judgment in favor of the defendant, from which plaintiff appeals.

The principal contentions here are that the court erred (1) in its denial of plaintiff's motion for summary judgment, (2) in the admission of evidence and (3) in certain of its findings of fact and conclusions of law.

On October 31, 1951, plaintiff purchased from Leo R. Alhand, as evidenced by bill of sale, a business known as "ABC" Lottery, and on November 30 of the same year, acquired in like manner from John Brookes the "Brookes" Baseball Pool. At the time these businesses were transferred to plaintiff, the parties entered into a written agreement which provided for the operation of the baseball pool and lottery by Brookes and Alhand at a stipulated weekly salary. The businesses were thus operated until October 1952, when they were discontinued by plaintiff at the request of the District Office of the American Legion. During the period of these operations plaintiff paid social security and withholding taxes upon the salaries received by Brookes and Alhand as well as other employees. During the period of the operation, the gross receipts from the lottery business amounted to some $50,000, and those from the baseball pool some $589,000, or a total of some $639,000. The Commissioner assessed a tax of $4,764.33 upon the gross receipts from the lottery and $54,692.74 upon the gross receipts from the baseball pool, or a total assessment of $59,457.07. Plaintiff was the recipient of all net proceeds derived from the two operations, which amounted to $3,099.94 on the lottery and $18,-

973.90 on the baseball pool. During the same period plaintiff's gross receipts from dues and other sources amounted to $11,878.48.

It is conceded that during the relevant period plaintiff was a corporation exempt from Federal income tax under the provisions of Sec. 101(8) of the Internal Revenue Code (Title 26 U.S.C.A.1952 ed., Sec. 101(8)).

Prior to the institution of the instant action, Leo R. Alhand died and probate proceedings were had on his estate in the Probate Court of Marion County, Indiana. In those proceedings the United States filed a written claim based upon the same assessment as that involved in the instant case. The Probate Court denied the claim and in doing so entered its findings of fact and conclusions of law. Among other things, the court found "That Edgewood American Legion Post No. 448, Inc., is not liable for the wagering excise tax under section 3285 of the Internal Revenue Code." It also entered the following conclusions of law:

"2. This claim requires the interpretation of Section 3285 and Section 3290 of the Internal Revenue Code.

"5. That Edgewood American Legion Post No. 448, Inc., is not a person liable for wagering excise tax within the pervue of Section 3285(b) (2) (B) of the Internal Revenue Code."

Plaintiff earnestly contends here, as it did in the District Court, that the decision of the Probate Court, together with its findings and conclusions of law, is a final and conclusive determination of the issue presently involved and that the government is precluded from maintaining the present action under the doctrine of *res judicata* or collateral estoppel. It was upon this basis that plaintiff sought a summary judgment in its favor. The District Court apparently agreed with the plaintiff in part, as is evidenced by its finding that the government because of the Probate Court proceedings is estopped from asserting that portion of its claim based upon the taxes assessed upon the proceeds from the lottery which Alhand operated for and on behalf of plaintiff.

Both sides cite a number of cases asserted to support their respective contentions upon this issue. It appears unnecessary to cite other than C. I. R. v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, relied upon by both sides, wherein the court cites and discusses its previous opinions. Our study of Sunnen and other cases leads us to the conclusion that the doctrine under discussion is without application and that the government is not estopped in the instant litigation. The parties before the Probate Court were the government and the representative of the estate of Alhand. Neither the instant plaintiff nor Brookes was a party, and the instant plaintiff was not in privity with the estate of Alhand. More than that, there was no mutuality of estoppel. If the government is estopped from asserting its claim because of an adverse ruling by the Probate Court, then by the same token the instant plaintiff would be estopped from asserting a defense if the ruling of that court had been adverse to it, and this in a proceeding in which it was not a party. We doubt if such a contention could be seriously advanced.

We think it unnecessary to discuss in detail plaintiff's criticism directed at certain of the findings made by the District Court. Perhaps the most urgent criticism is directed at the finding that the transfer of the lottery and baseball pool businesses to plaintiff by Alhand and Brookes, respectively, was not bona fide and was made for the purpose of avoiding the wagering excise tax. Plaintiff contends that the transfers were in good faith and that as a result it became the sole owner and operator of these businesses. We assume for the purpose of decision that such was the case, which makes it unnecessary to resolve any doubt which exists as to the validity of the finding. Frankly, however, we do not discern the reason for

**4**

plaintiff's insistence on this point unless it be that absent ownership and operation it would not be in a position to claim the exemption subsequently discussed.

As already noted, plaintiff was an organization exempt from the payment of income tax under Sec. 101(8), which, in our view, is of no aid to plaintiff in the instant matter. This is so because the assessment under consideration was made under Sec. 3285 of the Code, entitled "Wagering Taxes," and any exemption to which plaintiff may be entitled must be found within the terminology of that section.

It appears pertinent to quote the relevant provisions of the section. They are as follows:

"(a) Wagers. There shall be imposed on wagers, as defined in subsection (b), an excise tax equal to 10 per centum of the amount thereof.

"(b) Definitions. For the purposes of this chapter—

"(1) The term 'wager' means (A) any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers, (B) any wager placed in a wagering pool with respect to a sports event or a contest, if such pool is conducted for profit, and (C) any wager placed in a lottery conducted for profit.

"(2) The term 'lottery' includes the numbers game, policy, and similar types of wagering. The term does not include (A) any game of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game, and (B) any drawing conducted by an organization exempt from tax under section 101, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual.

\* \* \* \* \* \*

"(d) Persons liable for tax. Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery."

Thus, it will be noted that the statute in defining the term "lottery" specifies that it shall not include "any drawing conducted by an organization exempt from tax under section 101, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual." This is the sole language contained in the section which furnishes any basis for plaintiff's claimed exemption.

Plaintiff contends that this exemption applies both to the proceeds of a "wager" as defined in (b) (1) and to the proceeds of a "lottery" as defined in (b) (2), and that under such exemption the proceeds derived from the baseball pool and the lottery were exempt from the tax. With this contention we do not agree. A reading of the section makes it plain, so we think, that the exemption is limited to the proceeds of a lottery and not those derived from wagers, as those two terms are defined.

Plaintiff also argues that the proceeds from the baseball pool were not subject to a tax because its operation did not constitute "any wager placed in a wagering pool with respect to a sports event or a contest, if such pool is conducted for profit." This argument is based on the theory that the winner was determined by the number of runs scored in baseball games during the season rather than on the result of any particular game; that during the non-baseball season the winner depended upon the result of certain games played during the previous season, the games used being determined with reference to bank clearings, and that on Saturdays and Sundays, when no bank clearings

were available, a pea-shake was employed to determine the day of the previous baseball season to be used. This argument is little more than an exercise in semantics and in our view is without merit. The operation constituted a wagering pool, the winner of which was determined by reference to the happenings of a sports event. The particular manner in which such event was used in determining the winner is beside the point. The baseball pool as conducted was a wagering pool within the statutory definition and, as already shown, was conducted by plaintiff for its profit.

 The right of the government to tax the proceeds from the lottery presents a more difficult question. The winners of the lottery were determined by shaking lettered and numbered peas from a partitioned box. The question is, did this operation constitute "any drawing," as those words are used in the exemption provision? In our view, the question must be answered in the negative under the circumstances of the case. The legislative history of the Act indicates that it was the intention of Congress to exempt the occasional drawing conducted by organizations exempt from tax under Sec. 101. See Vol. 2, 1951 U.S. Code Congressional and Administrative Service, pages 1839, 1840 and 1841. If Congress had intended otherwise, it is reasonable to assume that it would have employed more definite and certain language. In the instant case plaintiff was the owner and engaged in the operation of a gambling establishment of considerable magnitude. The business was operated not by its members but by high salaried employees, trained and experienced in the wagering and lottery field, for the benefit and profit of plaintiff. Under such circumstances, it is not, in our judgment, entitled to the exemption.

■ Furthermore, plaintiff could not prevail even though we agreed with its contention that the lottery proceeds were exempt from tax. This is so for the reason that the tax assessed upon the receipts from the baseball pool was far in excess of that paid by plaintiff and sought to be recovered. Such being the case, the issue as to the taxability of the lottery proceeds is of no consequence.

■ We think there is no merit in plaintiff's contention relative to the erroneous admission of evidence. We also discern no occasion to discuss further the findings of the District Court of which plaintiff complains. This court will affirm a proper judgment even though we may not agree with all the reasoning employed by the trial court in arriving at the result. In our view, the judgment in the instant case was proper. It is, therefore,

Affirmed.