T.C. Memo. 1998-165

UNITED STATES TAX COURT

JOHN H. & MARY E. DOUGLAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21113-96.                    Filed May 6, 1998.

John H. Douglas, pro se.

<u>Gregory S. Matson</u>, for respondent.

MEMORANDUM OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]  Respondent determined deficiencies in

---

[1]  All section references are to the Internal Revenue Code
in effect for the years in issue, unless otherwise indicated.
All Rule references are to the Tax Court Rules of Practice and
(continued...)

petitioners' Federal income taxes for 1992 and 1993 in the amounts of $6,503 and $174, respectively.

After concessions,[2] the issues for decision are whether petitioners are entitled to a bad debt deduction claimed on Schedule C of their 1992 return and whether petitioners are entitled to deduct legal expenses claimed on Schedule C of their 1992 and 1993 returns or whether said expenses are properly allowable as miscellaneous itemized deductions.

Background

The facts have been fully stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioners resided at Fort Washington, Maryland.

From March 1982 through December 1989, petitioner John H. Douglas (hereinafter petitioner) purchased 11 residential properties. During this period, petitioner renovated seven of the properties and sold two of the properties.

In May 1983, petitioner bought an improved lot in Fort Washington, Maryland (hereinafter Fort Washington property), for

---

[1](...continued)
Procedure.

[2] Respondent conceded that petitioners are entitled to Schedule A miscellaneous itemized deductions, after limitations, in the total amount of $1,001 and $2,664 for years 1992 and 1993, respectively. This exceeds the amount allowed in the statutory notice of deficiency by $541 and $1,121 for years 1992 and 1993, respectively.

$15,000.  In November 1989, he sold the property to Vinson L. Baker and Danella M. Baker (the Bakers) for $61,000.  The Bakers obtained a mortgage loan through First Security Federal Savings and Loan Bank (hereinafter First Security) and paid petitioners $39,100 in cash at settlement.  The Bakers also provided petitioner with a deferred purchase money second deed of trust (hereinafter second deed) in the amount of $21,900.  The second deed was payable in one year at 12-percent interest.

A dispute arose between the Bakers and First Security, and the Bakers were unable to meet the interest obligations on their mortgage.  The Bakers brought a legal action against First Security, alleging that First Security had "set them up" to fail in order to obtain possession of the property.  The dates with respect to the dispute and the legal action against First Security are not clear from the record.  Petitioners agreed with the Bakers' allegations and paid legal fees and costs in order to protect petitioners' interests.

In 1989, Vinson Baker filed for Chapter 7 bankruptcy, and petitioner filed a claim as a creditor for $21,900 from the second deed and for $3,285 in accrued interest.  In 1992, Danella Baker filed for Chapter 7 bankruptcy, and petitioner claimed a debt in the amount of $28,000, which represented $21,900 from the second deed and $6,100 in accrued interest.  The U.S. Bankruptcy Court for the District of Columbia discharged Vinson Baker's debts in December 1991, and the U.S. Bankruptcy Court for the

District of Delaware discharged Danella Baker's debts in April 1993. The Bakers did not make any payments to petitioners on the second deed, and petitioners did not receive any distribution with respect to their respective claims made with the bankruptcy courts. On January 6, 1992, First Security was the sole bidder at the foreclosure of the Fort Washington property. First Security purchased the property for $70,000. This event precluded any disbursement to petitioners and rendered petitioners' second deed worthless.[3]

On their 1989 income tax return, petitioners reported the gain on the sale of the improved lot to the Bakers as long-term capital gain on Form 6252, Installment Sale Income. Petitioners' Form 6252 for 1989 reflects the following:[4]

| | | |
|---|---|---|
| Selling price | | $61,000 |
| Mortgage held by petitioners | | (21,900) |
| Cash received by petitioners | | 39,100 |
| Cost or other basis | $15,000 | |
| Depreciation | -0- | |
| Adjusted basis | 15,000 | |
| Commissions and expenses | 1,561 | (16,561) |
| Gross profit | | 44,439 |
| | | |
| Cash received in 1989 | | 39,100 |
| Taxable gain reported in 1989 | | 5,339 |

---

[3]    Respondent does not dispute that the second deed became worthless at this time.

[4]    We note that petitioners' Form 6252 for 1989 contains mathematical errors which are not at issue in this case.

Thus, petitioners did not include as income in 1989 the $21,900 amount of the second deed.[5]

Respondent argues that petitioners improperly excluded the amount of $21,900 attributable to the second deed from their income. Thus, respondent concludes that petitioners' gain should be calculated as follows:

| | | |
|---|---:|---:|
| Selling price | | $61,000 |
| Mortgages assumed by buyers or property subject to (not new) | | -0- |
| Contract price | | 61,000 |
| Cost or other basis | $15,000 | |
| Depreciation | -0- | |
| Adjusted basis | 15,000 | |
| Commissions and expenses | 1,561 | (16,561) |
| Gross profit | | 44,439 |
| | | |
| Cash in year of sale | | 39,100 |
| Taxable gain to be reported in 1989 ($39,100 x $44,439/$61,000) | | 28,484 |

On their 1992 income tax return, petitioners deducted $33,560 as a business bad debt on Schedule C. The amount of $33,560 represented the following: (1) $21,900 in unpaid principal from the second deed, (2) $9,160 in accrued interest and late fees, and (3) $2,500 in legal expenses. On Schedule C of their 1993 return, petitioners deducted $3,171 as legal expenses also associated with the legal action discussed above.

On their 1992 Form 1040, petitioner's Schedule C reflects "Real Estate (Rental, Buying & Selling)" as petitioner's

---

[5] In fact, petitioners did not include the $21,900 as income in any other year.

principal business activity.[6] Although petitioner's Schedule C does not reflect any income for 1992, his Schedule E reflects rental income and expenses from petitioner's properties.[7] The 1992 return also reflects that petitioners each received wages from employment unrelated to the Schedule C or rental activity and that petitioners' wages from such employment totaled $91,343.65.

Petitioner's 1993 Schedule C reflects "Real Estate-- Managing Residential Property" as his principal business activity. Again, the Schedule C does not reflect any income. The Schedule E, however, reflects rental income and expenses attributable to petitioner's properties. For 1993, petitioners reported wages in the total amount of $34,821.17.

Respondent determined that petitioners are not entitled to the claimed business bad debt deduction in the amount of $31,060 on Schedule C of their 1992 return. Respondent further argues that if petitioners are entitled to a bad debt deduction with respect to the amount described above, then the loss should be characterized as a nonbusiness bad debt rather than a business bad debt. Respondent also determined that the $2,500 in legal

---

[6] Petitioner's Form 1040 for 1989 does not include a Schedule C.

[7] Petitioner also reported rental income and expenses from his properties on Schedule E for 1987, 1988, and 1989. Petitioner did not list the Fort Washington property on Schedule E for either the tax years in issue or previous tax years.

expenses that petitioners deducted as a bad debt in 1992 was not a bona fide debt and, therefore, not deductible as a business bad debt. Finally, respondent determined that the $2,500 in legal expenses deducted in tax year 1992 and the $3,171 in legal expenses deducted in tax year 1993 are nonbusiness expenses properly allowable as miscellaneous itemized deductions.

Discussion

1. Bad Debt Deduction

(a) Second Deed

Section 166(a) generally allows a deduction for any bona fide debt that becomes worthless during the taxable year. Bad debts may be characterized as either business bad debts or nonbusiness bad debts. Sec. 166(d). A taxpayer is not entitled to a deduction for a worthless debt under section 166 in connection with an income item unless it has been included in the taxpayer's gross income for Federal income tax purposes either for the year for which the deduction is claimed or for a prior year. Gertz v. Commissioner, 64 T.C. 598, 600 (1975); O'Meara v. Commissioner, 8 T.C. 622, 633 (1947); sec. 1.166-1(e), Income Tax Regs. This principle also applies to interest owed to a taxpayer but never reported as income. W.L. Moody Cotton Co. v. Commissioner, 2 T.C. 347, 353-357 (1943), affd. 143 F.2d 712 (5th Cir. 1944).

Petitioners sold the Fort Washington property in 1989. Petitioners do not contend, nor does the record support a

finding, that petitioners included in their gross income the $21,900 of unpaid principal from the second deed. Under the installment reporting method, gain is not recognized until payments are received. Sec. 453(c). Since petitioners did not receive payments and never would report gain which corresponded to the $21,900 loss, petitioners never created a basis on which a later bad debt deduction could be claimed. See Lombard v. Commissioner, T.C. Memo. 1994-154, affd. per curiam without published opinion 57 F.3d 1066 (4th Cir. 1995). They also did not report as income the $9,160 in accrued interest and late fees attributable to the second deed. Since petitioners did not include in income any of the total amount of $31,060 in unpaid principal, interest, and late fees from the second deed, they are not entitled to a bad debt deduction under section 166.

(b)  Legal Expenses in 1992

A deduction for a bad debt is limited to a bona fide debt. Sec. 1.166-1(c), Income Tax Regs. A taxpayer must establish the validity of a debt before any portion of it may be deducted under section 166. American Offshore, Inc. v. Commissioner, 97 T.C. 579, 602 (1991); sec. 1.166-1(c), Income Tax Regs. A bona fide debt is defined as one which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs.

Petitioners do not contend, nor does the record support a finding, that they were entitled to a return of the $2,500 that they contributed toward the Bakers' legal action against First Security. Further, petitioners do not contend, and the record does not show, that a valid debtor-creditor relationship existed between petitioners and the Bakers, or any other person, with respect to the $2,500 in legal expenses. Rather, petitioners paid the legal fees in order to protect their own interests. Therefore, the $2,500 in legal expenses was not a bona fide debt within the meaning of section 166 and does not give rise to a claim for a bad debt deduction.

(c) Conclusion

Petitioners have not established that they are entitled to a business bad debt deduction with respect to the worthlessness of the $21,900 in unpaid principal on the second deed, the $9,160 in accrued interest and late fees from the second deed, or the $2,500 in legal expenses. Accordingly, respondent is sustained on this issue.

Since petitioners are not entitled to a bad debt deduction under section 166, we need not consider whether the debt was a business bad debt or a nonbusiness bad debt.

2. Legal Expenses in 1992 and 1993

Section 212 allows an individual to deduct all of the ordinary and necessary expenses paid or incurred in connection with (1) the production of income, (2) the management,

conservation, or maintenance of property held for the production of income, or (3) the determination, collection, or refund of any tax.  Section 212 applies to income-producing activity that is not a trade or business.  Woodward v. Commissioner, 397 U.S. 572, 575 n.3 (1970); United States v. Gilmore, 372 U.S. 39, 44-45 (1963).

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Petitioners must establish that the expenditures in question related to activities which amounted to the present carrying on of a business.  Reisinger v. Commissioner, 71 T.C. 568, 572 (1979).

Whether the taxpayer is engaged in a trade or business and what is the nature of such trade or business are questions of fact.  Ford v. Commissioner, 56 T.C. 1300, 1307 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973); Corbett v. Commissioner, 55 T.C. 884, 887 (1971).  The Supreme Court has interpreted the "trade or business" terminology of section 162 to mean that "the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  The courts distinguish between business losses and investment losses.  See, e.g., Whipple v. Commissioner, 373 U.S. 193 (1963).

Legal expenses are deductible under section 162(a) as ordinary and necessary business expenses if the litigation is directly connected with, or proximately related to, the taxpayer's business. Bingham's Trust v. Commissioner, 325 U.S. 365, 373-374 (1945); Kornhauser v. United States, 276 U.S. 145, 153 (1928); Rafter v. Commissioner, 60 T.C. 1, 8 (1973), affd. without published opinion 489 F.2d 752 (2d Cir. 1974).

Petitioner claims that he was engaged in the business of selling real estate as part of his renovation, management, and rental activities. While respondent concedes that petitioner participated in the purchase, renovation, management, rental, and sale of property, respondent contends that petitioner was not in the business of selling real estate during the years in issue. Rather, respondent characterizes petitioner's activities as investment activity.

We conclude that petitioner was not engaged in the business of selling real estate during 1992 and 1993. Although petitioner purchased 11 properties during the period 1982 through 1989, he renovated 7 of the properties and sold only 2 of the properties, 1 in 1989 and 1 in 1990. Thus, petitioner's sales activity was neither regular nor continuous. See Polakis v. Commissioner, 91 T.C. 660, 670-672 (1988). Further, petitioner's Schedules C for tax years 1992 and 1993 do not reflect any income; rather, petitioner reported the rental income and expenses from his properties on Schedule E. Petitioners reported the gain on the

sale of the property for which petitioners received the second deed as long-term capital gain and not as ordinary income. Petitioners also maintained outside employment and reported wages for 1992 and 1993 in the amounts of $91,343.65 and $34,821.17, respectively.

While petitioner participated in the purchase, renovation, management, rental, and sale of his property, he has not shown that he was engaged in the trade or business of selling real estate or in any other real estate business during the years in issue. From this record, it appears that petitioner engaged in the activities for investment purposes. Since petitioner's activities do not rise to the level of a trade or business within the intent and meaning of section 162(a), petitioners' legal expenses from years 1992 and 1993 are not deductible as business expenses attributable to an active trade or business.

Petitioners further contend that respondent previously treated petitioner's activities as an active trade or business for purposes of examinations conducted in 1989, 1990, and 1991. The parties have stipulated that

> The petitioners' income tax returns had been audited for 1989, 1990 and 1991; the activities of * * * [petitioner] were treated by the auditors at that time as an active trade or business for purposes of the audit, which did not involve issues related to taking a bad-debt deduction.

Each tax year stands on its own and must be separately considered. United States v. Skelly Oil Co., 394 U.S. 678, 684

(1969).  The Commissioner is not bound in any given year to allow a deduction permitted in a previous year.  Lerch v. Commissioner, 877 F.2d 624, 627 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Knights of Columbus Council No. 3660 v. United States, 783 F.2d 69 (7th Cir. 1986).

Petitioners have failed to establish that they are entitled to a business expense deduction with respect to the $2,500 in legal expenses from 1992 or the $3,171 in legal expenses from 1993.  Rather, as allowed by respondent in the notice of deficiency, the legal expenses of $2,500 for 1992 and $3,171 for 1993 are properly allowed as miscellaneous itemized deductions pursuant to section 212.  Accordingly, respondent is sustained on this issue.

To reflect the foregoing,

Decision will be entered under Rule 155.