T.C. Memo. 2001-79


UNITED STATES TAX COURT


THOMAS J. ROSSER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1201-98.                    Filed March 30, 2001.


<u>Carla I. Struble</u>, for petitioner.

<u>Gary R. Shuler, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's income tax of $13,858 for 1993 and $24,697.91 for 1994, additions to tax for failure to timely file under section 6651(a) of $1,386 for 1993 and $6,175 for 1994, and an accuracy-related penalty of $2,772 for 1993 and $4,939 for 1994 for a substantial understatement of tax under section 6662(a).

After concessions, the issues for decision are:

1.  Whether interest that petitioner paid in 1993 and 1994 for loans that he used to acquire, renovate, and operate two nursing homes and to buy interests in the Sunbury building and Heritage Inn partnerships is trade or business interest.  We hold that interest relating to the nursing homes is trade or business interest, but interest relating to the Sunbury building and Heritage Inn partnerships is not.

2.  Whether petitioner may deduct net operating losses in 1994 that were carried forward from 1991 and 1993.  We hold that he may not.

3.  Whether petitioner is liable for additions to tax under section 6651(a) for failure to file timely income tax returns for 1993 and 1994.  We hold that he is.

4.  Whether petitioner is liable for the penalty under section 6662(a) for substantial understatement of tax for 1993 and 1994.  We hold that he is to the extent the underpayments in 1993 and 1994 exceed the greater of 10 percent of the tax required to be shown on the return for each of those years, or $5,000.  See sec. 6662(d)(1)(A).

Section references are to the Internal Revenue Code in effect during the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner

Petitioner lived in Westerville, Ohio, when the petition was filed in this case.  Beginning about 1979, petitioner provided financial services to individuals through a sole proprietorship named Financial Perspectives.  Petitioner, his former wife, and two other couples, formed a general partnership which bought a building on Sunbury Road in Westerville (Sunbury building) in 1987.  Financial Perspectives' office was in the Sunbury building.  Petitioner managed the Sunbury building.

B.    The Nursing Homes

1.    Acquisition, Incorporation, and Financing

In December 1985, petitioner and his former wife paid $650,000 to buy a nursing home in Kirkersville, Ohio (Kirkersville Nursing Home), from Joseph and Maureen Skidmore (the Skidmores).  Petitioner and his former wife borrowed money from State Savings Bank, the Skidmores, and Financial Perspectives' clients to buy the Kirkersville Nursing Home.  In 1986, petitioner and his former wife bought a nursing home in Utica, Ohio (Utica Nursing Home), from Ms. Maybelle William Braddock (Braddock) for $850,000.  Braddock financed the purchase.

In 1987, petitioner organized two S corporations:  Living Care Alternatives of Kirkersville, Inc. (LCAK), and Living Care Alternatives of Utica, Inc. (LCAU).  Petitioner transferred ownership of the Kirkersville Nursing Home to LCAK and ownership of the Utica Nursing Home to LCAU.  After the transfers, he remained responsible for repaying the funds that he had borrowed to acquire the nursing homes.  LCAK and LCAU never paid dividends or made other distributions to petitioner as a shareholder.  LCAK and LCAU had no accumulated earnings and profits in 1993 and 1994.

Petitioner, as president of the S corporations, signed promissory notes in which he agreed to pay himself and his former wife $576,130.42 on April 1, 1987, and $700,000 on October 8, 1987.

On October 8, 1987, petitioner and his former wife borrowed $500,000 from County Savings Bank.  Petitioner paid $450,000 to Braddock to repay her for financing the Utica Nursing Home purchase.  He used the rest to renovate the Utica Nursing Home.

2.   Management

Petitioner bought the nursing homes so that he could earn income from operating them and to provide a job for his then-spouse.  Petitioner planned to earn a fee for managing the nursing homes and for his wife to earn a salary for serving as the administrator of the nursing homes.  Petitioner hoped to sell

the nursing homes for a profit when he retired, but that was not a significant consideration for him when he bought them.

Petitioner was the sole shareholder of LCAK and LCAU in 1993 and 1994.  Petitioner, doing business as Financial Perspectives, spent an increasing amount of time managing the nursing homes after 1985, and spent about 97 percent of his time managing them in 1993 and 1994 and about 3 percent of his time on financial services.

Petitioner's annual income from providing financial services was $60,000 to $80,000 before he bought the nursing homes.

C.    Other Loans

Petitioner borrowed money from County Savings Bank, Braddock, the Skidmores, Dean and Maxine Williams, State Savings Bank, and 5th Third Bank to acquire operate, improve, and develop the nursing homes as follows:

| Loan | New Funds or Replacement Note |
|------|-------------------------------|

### 1989
| | |
|---|---|
| $10,000 | replacement note |

### 1990
| | |
|---|---|
| $5,000 | replacement note |

### 1991
| | |
|---|---|
| $20,000 | new funds |
| 45,000 | replacement note |
| 10,000 | new funds |
| 5,000 | replacement note |
| 10,000 | replacement note |

### 1992
| | |
|---|---|
| $35,000 | new funds |
| 53,000 | replacement note |
| 10,500 | replacement note |
| 30,000 | replacement note |
| 10,000 | new funds |
| 105,000 | replacement note |
| 15,000 | replacement note |
| 25,000 | replacement note |

### 1993
| | |
|---|---|
| 17,939 | replacement note |
| 21,000 | new funds |
| 15,000 | replacement note |
| 20,000 | new funds |

Petitioner borrowed $1,500 in 1992 and $20,000 in 1993 that he used for the Sunbury building in a manner not described in the record.[1]  The record does not show how much interest petitioner paid on these loans in the years in issue.  Petitioner also borrowed money to invest in a limited partnership that owned a nursing home called the Heritage Inn.  In 1993, petitioner paid

---

[1]  The parties stipulated that these are "replacement notes".  However, the record does not indicate which loans these notes replaced.

interest on $1,000 that he borrowed to pay for another person's car lease, $10,000 that he used to retire an obligation of another person, and $5,000 to establish a trust for another person.

D.    Petitioner's Income Tax Returns

Petitioner reported on Schedules C (Profit or Loss From Business) attached to his Forms 1040 (U.S. Individual Income Tax Returns) that, doing business as Financial Perspectives, he had cash receipts of $155,584 for 1990, $118,745 for 1991, and $151,152 for 1992, and business expenses (other than interest) of $44,403 for 1990, $46,790 for 1991, and $52,993 for 1992.

1.    1990

For 1990, petitioner reported that he, through Financial Perspectives, paid mortgage interest of $173,872 and other interest of $68,209.  He reported that he paid mortgage interest in 1990 of $34,479 to State Savings Bank, $57,662.23 to County Savings Bank, $25,005.96 to the Skidmores, $17,224.33 to an unidentified lender for the second mortgage for the Utica Nursing Home, and $39,500 to an unidentified lender for the first mortgage for the Kirkersville Nursing Home.

2.    1991

For 1991, petitioner reported gross income of $118,745, adjusted gross income of $21,316, deductions of $165,841

(including $119,051 for interest payments), and a loss of $47,096.

    3.   <u>1992</u>

For 1992, petitioner reported gross income of $151,152, adjusted gross income of $28,009, deductions of $239,898 (including $119,079 for mortgage interest payments and $67,826 for other interest), and a $88,746 loss.  He reported paying mortgage interest for 1992 of $45,878.78 to County Savings Bank, $16,700.58 to Williams, $24,003.01 to the Skidmores, $29,211.14 to State Savings Bank, and $3,285.55 to 5th Third Bank.

    4.   <u>1993 and 1994</u>

Petitioner filed his Federal income tax return for 1993 on November 21, 1994, and for 1994 on October 19, 1995.  On the Schedules C for Financial Perspectives, petitioner reported the following:

| 1993 | Income | Expenses |
|---|---|---|
| Total cash receipts | $149,213 | |
| Total business expenses (other than interest) | | 60,159 |
| Mortgage and other interest[1] | | 180,583 |
| | | |
| 1994 | | |
| Total cash receipts | 140,302 | |
| Total business expenses (other than interest) | | 59,093 |
| Mortgage and other interest[2] | | 180,625 |

[1]  On his 1993 Schedule C for Financial Perspectives, petitioner reported paying mortgage interest of $45,190.03 to County Savings Bank, $23,415.55 to State Savings Bank, $23,140.65 to the Skidmores, $16,328.84 to Williams, and $2,244.48 to Park National Bank and other interest of $72,508.  Petitioner contends

that "other interest" includes the interest on the $1,000 car lease, $10,000 that he used to retire an obligation, and $5,000 to establish a trust, all for what petitioner contends was for the benefit of an architect who worked on the nursing homes.

[2] On his 1994 Schedule C for Financial Perspectives, petitioner reported paying mortgage interest of $19,689.65 to State Savings Bank, $44,695.97 to County Savings, and $2,191.37 to Park National Bank and other interest of $116,240.

### 5.  Election Under Section 172(b)(3)

Petitioner claimed a $63,482 net operating loss on his 1994 return. He referred to a "Statement 01" on the return, but he did not file it with the return. Petitioner faxed respondent a "Form 1040 Supporting Statement 01" on January 9, 1996, which stated that the claimed $63,482 loss was from carryovers of $30,750 from 1993 and $32,732 from 1991.

Petitioner did not indicate on his 1991 or 1993 income tax returns that he intended to forgo the then available 3-year net operating loss carryback. See sec. 172(b)(3).

### OPINION

### A.  Petitioner's Interest Deduction

#### 1.  Whether Petitioner Had a Substantial Investment Intent in Acquiring the Nursing Homes

Respondent contends that the interest at issue is not trade or business interest because petitioner used the loans to buy, renovate, and operate the nursing homes and that petitioner held them as investments. We disagree.

A taxpayer holds property for investment if he or she had a substantial investment intent in acquiring and holding the property.  See Recklitis v. Commissioner, 91 T.C. 874, 907 (1988); Polakis v. Commissioner, 91 T.C. 660, 668 n.8 (1988); Miller v. Commissioner, 70 T.C. 448, 455-456 (1978); W. W. Windle Co. v. Commissioner, 65 T.C. 694, 713 (1976).  A taxpayer lacks a substantial investment intent if the taxpayer acquires a business solely to provide employment for himself.  See Boseker v. Commissioner, T.C. Memo. 1986-353; Schanhofer v. Commissioner, T.C. Memo. 1986-166.

Petitioner bought the nursing homes to provide self-employment income for himself and employment for his former spouse.  About 97 percent of petitioner's income in 1993 and 1994 was from the nursing homes.  He hoped to sell the nursing homes for a profit when he retired, but any investment motive was remote or nonexistent.  Thus, this case is unlike Miller v. Commissioner, 70 T.C. 448, 453, 457 (1978), and Malone v. Commissioner, T.C. Memo. 1996-408, in which the taxpayers bought a controlling interest in the stock of businesses predominantly as an investment.  We conclude that petitioner did not have a substantial investment intent when he bought and held the nursing homes, that he did not hold the nursing homes for investment, and

that the interest relating to the nursing homes is trade or business interest. See sec. 163(d)(3)(A).[2]

Petitioner contends that he may deduct interest on $1,000 that he borrowed to pay for a car lease, $10,000 that he used to retire an obligation, and $5,000 that he used to establish a trust, all to pay an architect who worked on the nursing homes. We disagree. There is no evidence petitioner borrowed these amounts for an architect or that these amounts were payment for work on the nursing homes. We conclude that interest that petitioner paid to acquire the car lease, retire the obligation, and establish a trust was not trade or business interest.

2. <u>Whether the Interest Relating to the Nursing Homes Is the Expense of the S Corporation and Not of Petitioner</u>

Respondent contends that petitioner may not deduct the interest that petitioner paid to buy, renovate, and operate the nursing homes because it is an expense of the S corporations, citing <u>Hewett v. Commissioner</u>, 47 T.C. 483, 488 (1967); <u>Hudlow v. Commissioner</u>, T.C. Memo. 1971-218; and <u>Strasburger v. Commissioner</u>, T.C. Memo. 1962-255, affd. 327 F.2d 236 (6th Cir. 1964).

---

[2] Interest allocable to the trade or business of providing services as an employee is nondeductible personal interest. See sec. 163(h)(2)(A). That limitation does not apply here because petitioner was not an employee; instead, he earned self-employment income through his Schedule C activity.

We disagree.  In those cases, the taxpayers' corporations incurred expenses related to the corporations and not to the taxpayers individually.  We held that those taxpayers could not deduct their corporations' expenses.  Here, the interest at issue relates to petitioner individually.  Petitioner bought the nursing homes primarily to provide employment for himself and his wife.  He was personally liable to pay the interest.  We conclude that the interest expense is his and not that of the S corporations.  See Boseker v. Commissioner, supra; Schanhofer v. Commissioner, supra.  None of the cases that respondent cites involves a taxpayer who borrowed money to buy a business to provide his livelihood.  We hold that petitioner may deduct the interest that he paid in 1993 and 1994 for loans that he used to acquire, renovate, and operate the nursing homes.

3.    Interest Relating to the Sunbury Building and Heritage Inn Partnerships

Petitioner contends that the interest that he paid on loans used to acquire the Sunbury building and Heritage Inn partnerships was trade or business interest because he was a general partner of the partnerships and because Financial Perspectives and the nursing homes had offices in the Sunbury building.  We disagree.

Petitioner did not buy interests in those partnerships to provide employment for himself.  The record is not clear about the extent to which he participated in those partnerships.  The

Heritage Inn and Sunbury building partnerships only remotely relate to petitioner's trade or business. We conclude that the interest that petitioner paid in 1993 and 1994 relating to the Sunbury building general partnership and Heritage Inn limited partnership is not trade or business interest.

Petitioner contends that respondent is estopped from contending that he may not deduct the interest at issue as trade or business interest because respondent had not disallowed it in prior audits. We disagree. The Commissioner's failure to raise an issue in a prior audit does not estop the Commissioner from raising it in an audit for a later year. See <u>Knights of Columbus Council #3660 v. United States</u>, 783 F.2d 69, 72-73 (7th Cir. 1986); <u>Hawkins v. Commissioner</u>, 713 F.2d 347, 351-352 (8th Cir. 1983), affg. T.C. Memo. 1982-451.

4. <u>Conclusion</u>

We conclude that petitioner may deduct the interest that he paid in 1993 and 1994 relating to loans he used for the nursing homes under sections 162(a) and 163(a). We also conclude that the interest that petitioner paid in 1993 and 1994 relating to the Sunbury building and Heritage Inn Partnerships is not trade or business interest because petitioner acquired and held them for investment.

B.   Whether Petitioner May Carry Forward to 1994 Net Operating Losses From 1991 and 1993

Petitioner contends that he may carry forward to 1994 net operating losses from 1991 and 1993.  We disagree.

Generally, for the years in issue, a taxpayer must carry a net operating loss back 3 years and carry it forward 15 years.  See sec. 172(b)(1)(A).[3]  A taxpayer may elect to forgo the carryback period.  See sec. 172(b)(3).  Petitioner did not elect to forgo the carryback period for 1991 or 1993.

When a taxpayer does not elect to forgo the carryback period, the taxpayer may carry losses forward only to the extent they exceed the taxable income for the carryback years even if the taxpayer did not carry back operating losses for those years.  See sec. 172(b)(2).  To carry forward or carry back net operating losses, the taxpayer must prove the amount of the net operating loss carryforward or carryback and that his or her gross income in other years did not offset that loss.  See sec. 172(c); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958); Vaughan v. Commissioner, 15 B.T.A. 596, 600 (1929).

Petitioner offered into evidence his tax returns for 1990, 1991, 1992, and 1993.  A tax return does not establish that a taxpayer had income and losses in the amounts reported on the

---

[3]  In 1997, sec. 172(b)(1)(A) was amended to generally require a 2-year carryback and 20-year carryforward.

return.  See <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979); <u>Roberts v. Commissioner</u>, 62 T.C. 834, 837, 839 (1974). Petitioner did not establish the amount of his 1991 or 1993 net operating loss, or that his income in the carryback years before 1991 or 1993 did not fully offset any net operating loss.[4]

Petitioner has failed to show that he may carry a net operating loss forward from 1991 or 1993 to 1994.  We conclude that petitioner may not carry forward any losses to 1994.

C.   <u>Whether Petitioner Is Liable for the Addition to Tax for Failure To Timely File</u>

Respondent determined that petitioner is liable for the addition to tax for failure to timely file his returns for 1993 and 1994.  Petitioner did not show that he had reasonable cause for failing to file timely the returns in issue.  Petitioner offered no evidence and made no argument on this issue.  Thus, petitioner has conceded this issue.  See, e.g., <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370 (1993); <u>Sundstrand Corp. v. Commissioner</u>, 96 T.C. 226, 344 (1991); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 n.19 (1988); <u>Money v. Commissioner</u>, 89 T.C. 46, 48 (1987); <u>Leahy v. Commissioner</u>, 87 T.C. 56, 73-74 (1986).

---

[4]  Thus, we need not decide petitioner's contentions that he should not be required to have elected under sec. 172(b)(3) on his original 1991 and 1993 returns or that respondent has discretion to allow him to elect now.

D.    Whether Petitioner Is Liable for the Accuracy-Related Penalty under Section 6662(a)

Respondent determined and contends that petitioner is liable for the accuracy-related penalty for substantial understatement of income tax for 1993 and 1994 under section 6662(a).

Petitioner contends that respondent is estopped from asserting the accuracy-related penalty under section 6662(a) because respondent conceded at trial that negligence is not an issue in this case.  We disagree.

Respondent contends that the accuracy-related penalty applies because there is a substantial understatement of tax, not because of negligence.  See sec. 6662(b)(2).  Section 6662(b)(2) imposes a 20-percent penalty on the portion of an underpayment attributable to a substantial understatement.  A substantial understatement exists if, for any taxable year, the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000.  See sec. 6662(d)(1)(A).

If the taxpayer has substantial authority for his or her tax treatment of any item on the return, the understatement is reduced accordingly.  See sec. 6662(d)(2)(B)(i).  Petitioner cited no authority for his position that he may carry forward net operating losses from 1991 and 1993 to 1994 when he made no election under section 172(b)(3) and when he did not establish that he had losses that he could carry forward from 1991 and 1993

to 1994. We conclude that the exception under section 6662(d)(2)(B)(i) does not apply.

The amount of the understatement is reduced for any item that is adequately disclosed in the taxpayer's return, or in a statement attached to the return, if there is reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B)(ii). The mere claiming of a deduction is not disclosure for purposes of section 6662(d)(2)(B)(ii)(I). See Accardo v. Commissioner, 942 F.2d 444, 453 (7th Cir. 1991) (taxpayer's statement that his deduction of $207,000 was for "Legal fees re conservation of property held for production of income" is not disclosure for purposes of section 6662(b)(2)(B)(ii)(I)), affg. 94 T.C. 96 (1990); Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987) (mere reporting of income and deductions does not constitute disclosure of relevant facts). Here, deducting net operating losses carried forward from 1991 and 1993 to 1994 is not adequate disclosure under section 6662(d)(2)(B)(ii)(I). Thus, petitioner did not adequately disclose the nature of the net operating loss carryforward controversy for purposes of section 6662(d)(2)(B)(ii)(I).

We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a) for any part of the underpayment for 1993 and 1994 to the extent the underpayment in

those years exceeds the greater of 10 percent of the tax required to be shown on the return for those years, or $5,000.  See sec. 6662(d)(1)(A).

To reflect concessions by the parties and the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.